IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


THE ESTATE OF JOSHUA W.
DEVILBISS, DECEASED,
by and through LINDSEY DEVILBISS,
SPECIAL ADMINISTRATOR OF THE
ESTATE OF JOSHUA W.
DEVILBISS DECEASED, et al.

      Plaintiffs,

v.                                                                    Case No. 19-2490-JWB

MEADE COUNTY, KANSAS
BOARD OF COUNTY COMMISSIONERS, et al.

      Defendants.


## MEMORANDUM ORDER

This matter is before the court on Defendants' motions to dismiss (Docs. 50, 53, 56) and

Plaintiffs' motion for leave to amend complaint (Doc. 67).  With the exception of the motion to

dismiss filed on behalf of Sedgwick County officials, (Doc. 56), the motions have been fully

briefed and are ripe for decision.  (Docs. 51, 53, 57, 67, 68, 69, 71, 73, 74.)  Plaintiffs failed to

respond to the motion filed by Sedgwick County officials, (Doc. 56), and the time for doing so has

expired.  For the reasons set forth herein, the motions to dismiss are GRANTED and the motion

to amend is DENIED.

**I.**      **Background**

The following factual allegations are taken from Plaintiffs'[1] proposed Third Amended Complaint.  (Doc. 67-1.)  Overcrowding has long been an issue at the Sedgwick County Jail, and to deal with this the jail often sends inmates to neighboring county jails.  Once an individual is booked into the jail, the classification department performs in-person interviews with the inmates, background checks, and a personal questionnaire.  This information is then used to give inmates a score which determines where they are housed.  Pursuant to the classification department's policies, inmates cannot be transferred out of Sedgwick County if they have a mental illness or serious illness because they cannot be treated anywhere else.  Due to overcrowding in the Sedgwick County Jail, Joshua DeVilbiss, a prisoner of the Sedgwick County Sheriff, was held in the Meade County Jail ("MCJ").  However, Joshua, suffering from some undisclosed illness and urinating blood, requested and was granted a transfer back to Sedgwick County Jail.

Before his transfer was effectuated, Joshua and Defendant D'Anthony Andrews were housed in the same "pod" along with approximately 18 other inmates at MCJ.  Joshua gambled with other inmates and eventually became indebted to Defendant Andrews for two packages of ramen noodles.  Throughout the evening of August 28, 2017, Defendant Andrews confronted Joshua multiple times demanding payment of the noodles.  Joshua did not produce the noodles and instead requested to go into solitary confinement.  At about 7:08 p.m., the lone correctional officer overseeing the pod, without a radio, notified the dispatcher at the MCJ there was about to be a fight and requested a deputy for assistance.  At about 7:10 p.m., the monitoring correctional officer reported the situation appeared to be deescalating.  However, this assessment was incorrect as Defendant Andrews proceeded to strike Joshua from behind, contacting the right side of his face

---

[1] Plaintiff died intestate.  He is survived by two children, to wit: Plaintiffs E.A.D. and C.W.D. (hereinafter "children").  Plaintiff Lindsey DeVilbiss, the mother of Plaintiff's children, is the duly appointed Special Administrator of the Estate of Joshua DeVilbiss.  (Doc. 67 at 2.)

and neck, and knocking Joshua unconscious to the floor.  Joshua, who did not see the attack coming, was unable to brace himself for the fall.  Immediately after falling to the floor, Joshua began bleeding from his face and head while lying motionless.  Defendant Andrews attempted to revive Joshua by pouring a bucket of water on him.  When this failed, Defendant Andrews enlisted three inmates to assist him in moving Joshua from the sleeping area, where he had been assaulted, to the shower area.  Plaintiffs alternatively allege that "MCJ either was not aware because of the inoperable cameras (as believed by many inmates), lacked available personnel, and/or knowingly watched" as Joshua was attacked.

At 7:18 p.m., the monitoring correction officer and a Meade County deputy found Joshua lying on the floor of the shower area of the pod, motionless with blood visible near his head, jumpsuit, t-shirt, and underwear.  At 7:19 p.m., an ambulance was called for Joshua and arrived at or about 7:23 p.m.  Joshua was assessed and determined to be deceased.

Plaintiffs filed their initial complaint in this court on August 20, 2019.  Plaintiffs filed their first amended complaint on August 21, 2019.  The second amended complaint—alleging four § 1983 claims under the Fifth, Eighth, Ninth, and Fourteenth Amendments[2]; a state law claim for wrongful death; a state law claim for negligence; and breach of duty to a third-party beneficiary—

---

[2] Plaintiffs list the Fifth, Eighth, Ninth, and Fourteenth Amendments in their complaint, but their responses (Docs. 68, 69) refer only to the Eighth Amendment, and the motions to dismiss and accompanying briefs all refer exclusively to that amendment.  The court accordingly addresses the motion by applying Eighth Amendment standards.  The court notes that the Eighth Amendment protects the rights of convicted prisoners, whereas the Fourteenth Amendment protects the rights of pretrial detainees.  *See Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020).  It is not clear from the complaint whether Plaintiff had been convicted of an offense at the time of his detention in Meade County, or whether he was still a pretrial detainee.  The Supreme Court has held that this distinction in status makes a difference in the standard governing excessive force claims.  *See Kingsley v. Hendrickson,* 576 U.S. 389 (2015).  Nevertheless, the distinction makes no difference here.  In *Strain,* the Tenth Circuit rejected an argument that *Kingsley* altered the standard applicable to claims of deliberate indifference.  *Id.* at 993.  Accordingly, the standard governing Eighth Amendment claims of deliberate indifference to inmate health applies to Plaintiff's claim regardless of his status.  *See id.* at 993 ("We therefore join our sister circuits that have declined to extend *Kingsley* to deliberate indifference claims and will apply our two-prong test to Plaintiff's claims.")

was filed on March 2, 2020.  All defendants, except for Andrews[3], moved to dismiss Plaintiffs'

claims.  Plaintiffs filed a motion for leave to amend their complaint on April 24, 2020.  The

attached proposed Third Amended Complaint seeks to add the Estate of Joshua as the proper

plaintiff asserting the four § 1983 claims.  (Doc. 67-1.)

## II.      Standards

### A.      Lack of Subject Matter Jurisdiction

"Different standards apply to a motion to dismiss based on lack of subject matter

jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule

12(b)(6)."  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).  When the

court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first

determine that it has subject matter jurisdiction over the controversy before reviewing the merits

of the case under Rule 12(b)(6).  *Bell v. Hood*, 327 U.S. 678, 682 (1946).  Because federal courts

are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of

establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.      Motion to Amend

The rule applicable in these circumstances, Fed. R. Civ. P. 15(a)(2), provides that a party

may amend its pleading only with consent of the opposing party or with the court's leave.  *Id.*

"The court should freely give leave when justice so requires."  *Id.*  A court may refuse to grant

leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or

dilatory motive, failure to cure deficiencies . . . or futility of amendment."  *Loggins v. Norwood*,

---

[3] Defendant Andrews, in his answer (Doc. 49) to Plaintiffs' second amended complaint, invoked his Fifth Amendment right against self-incrimination.

No. 18-3016-DDC-KGG, 2020 WL 224544, at *4 (D. Kan. Jan. 15, 2020) (citing *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009)).

A proposed amendment is futile if the pleading, as amended, would be subject to dismissal. *Ad Astra Recovery Servs., Inc. v. Heath,* No. 18-1145-JWB-ADM, 2019 WL 7187329, at *5 (D. Kan. Dec. 26, 2019) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). In making that determination, the court considers whether the amended complaint could withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). With the proposed Third Amended Complaint asserting claims against multiple defendants it is particularly important for Plaintiff to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him." *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (citations omitted). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

**C.      § 1983 Qualified Immunity**

The named Defendants move for dismissal on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established if there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). The court must determine "whether the violative nature of particular conduct is clearly established." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1866 (2017) (internal quotations omitted).

In doing so, the court is not required to find that "'the very action in question has previously been held unlawful.'" *Id.* at 1866 (quoting *Anderson*, 483 U.S. at 640); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) ("A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")

There "need not be a case precisely on point." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). But "it is a 'longstanding principle that clearly established

> law should not be defined at a high level of generality.'" *Id.* (quoting *White v. Pauly*,
> __ U.S. __, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam) ); *see also*
> *District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453
> (2018) ("The clearly established standard ... requires a high degree of specificity."
> (quotations omitted)). "[T]he salient question ... is whether the state of the law ...
> gave [the defendants] fair warning that their alleged treatment of [the plaintiffs]
> was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L.
> Ed. 2d 666 (2002).

*Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019).   The test is whether "the unlawfulness of

the officer's conduct '[is] apparent . . . in the light of pre-existing law." *Ziglar,* 137 S. Ct. at 1867

(quoting *Anderson*, 483 U.S. at 640).   Generally, "existing precedent must have placed the

statutory or constitutional question beyond debate" for a right to be clearly established.  *Mullenix*

*v. Luna*, 577 U.S. 7, 12 (2015).

Qualified immunity defenses are usually resolved at the summary judgment stage, although

"district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v.*

*Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

### D.    Supervisor Liability

Vicarious liability is inapplicable to § 1983 claims.  *Iqbal*, 556 U.S. at 676.  As such, "a

plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Id.*  A plaintiff may also plead a claim against a "defendant-

supervisor who creates, promulgates, implements, or in some other way possesses responsibility

for the continued operation of a policy" which caused the constitutional harm.   *Dodds v.*

*Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).  Therefore, personal liability includes both

personal involvement and supervisory liability due to a policy.  *Brown v. Montoya*, 662 F.3d 1152,

1164-1165 (10th Cir. 2011) (Personal liability through "his personal participation" "or the

promulgation of a policy.").

If the basis of liability is a policy, a plaintiff must prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. "An affirmative link must exist between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, or failure to supervise." *Quint v. Cox*, 348 F. Supp. 2d 1243, 1250 (D. Kan. 2004). "Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006) (citation omitted). Importantly, an underlying constitutional violation is required to proceed under a supervisor liability theory against an individual. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

## III. Discussion

The proposed Third Amended Complaint alleges four constitutional claims: (1) failure to protect Joshua from inmate-on-inmate violence; (2) failure to train; (3) failure to supervise; and (4) failure to provide medical care to Joshua. The failure to protect claim is brought against Meade County, Kansas Board of County Commissioners, Sedgwick County, Kansas Board of County Commissioners, Sheriff Jeff Easter, Undersheriffs Brenda Dietzman and Brian White, Sheriff Mark Miller, and Undersheriff Nancy Mitchell in their individual and official capacities. The remaining federal claims are against Sheriff Mark Miller and Undersheriff Nancy Mitchell in their individual and official capacities.

### A. Motions to Dismiss Second Amended Complaint for Lack of Standing

Questions of standing implicate a federal court's subject matter jurisdiction. *Amco Ins. Co. v. Mark's Custom Signs, Inc.*, No. 12-cv-2065-CM, 2012 WL 1721896, at *1 (D. Kan. May 16,

2012).  Subject matter jurisdiction is a threshold question that must be addressed first.  *Bell v. Hood*, 327 U.S. 678, 682 (1946).  In their motions to dismiss the Second Amended Complaint, Defendants assert that the named Plaintiffs in the Second Amended Complaint lack standing to assert § 1983 claims on behalf of the decedent, Joshua DeVilbiss.  (Docs. 51, 53, 56.)

In the Second Amended Complaint, Lindsey DeVilbiss and her children are listed as plaintiffs asserting federal claims to "redress the depravation under color of state law, of rights, privileges and immunities secured to the decedent, Joshua W. DeVilbiss," not any right of their own.  (Doc. 46 at 3.)  Defendants are correct that § 1983 claims are personal and do "not accrue to a relative, not even the father of the deceased."  *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982).  Rather, a § 1983 claim "must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."  *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).  The Tenth Circuit has held that a decedent's estate may maintain a survival action under § 1983.  *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506-07 (10th Cir. 1990).  Here, Plaintiffs originally filed this action in their own individual capacities.  The federal claims must be brought by Joshua's estate and not by Plaintiffs individually.  *Id*.  Accordingly, claims in the Second Amended Complaint alleging a violation of Joshua's civil rights are subject to dismissal for lack of standing.  However, as explained below, this jurisdictional issue is cured by the proposed Third Amended Complaint.

**B.    Motion to Amend Complaint—Proposed Third Amended Complaint**

The only appreciable difference between the proposed Third Amended Complaint and its predecessor is the addition of the Estate of Joshua DeVilbiss as a plaintiff.  *Compare* (Doc. 46 at 3) *with* (Doc. 67-1 at 2-3.)  The complaint also contains three new factual allegations:

88. Each of the Defendant Counties controls and/or influences the budget, personnel, and resources of the respective jails, as reported by the Sheriffs and their agents, employees, and/or contractors.

89. The Defendant Sheriffs' and any agents, employees, and/or contractors were directly aware of the problems such as lack of functioning cameras, lack of proper personnel (or number thereof working at any time), and proper functioning radio equipment, inter alia.

90. As stated herein, the problem involved with both jails (especially concerning the Sedgwick County Jail) have long been known, and consequently any Defendant has knowledge of the circumstances alleged herein.

(Doc. 67-1 at 15.)

Plaintiff Lindsey DeVilbiss is now listed as the duly appointed special administrator of Joshua's Estate and is authorized to bring the § 1983 claims discussed below. (Doc. 67 at 2.) While Defendants admit Joshua's Estate has standing, they pivot and argue the claims of the estate are barred by the statute of limitations. (Doc. 73 at 4, 9); *see also Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("[T]he appropriate statute of limitations for § 1983 actions arising in Kansas is two years, under Kan. Stat. Ann. § 60-513(a)(4).") Joshua's death occurred on August 28, 2017, which gave the estate until August 28, 2019 to assert any § 1983 claims. However, the Estate's first attempt to assert its claims was the motion to amend filed April 24, 2020—almost eight months after the statute of limitations expired. Defendants argue the proposed Third Amended Complaint is thus futile because it would be subject to immediate dismissal for lack of standing because the claims of the Estate are barred by the statute of limitations and the other Plaintiffs have no standing. Rather than dismiss Plaintiffs' claims on the procedural basis urged by Defendants, the court, under Fed. R. Civ. P. Rule 17(a)(3), is required to allow "the real party in interest to ratify, join, or be substituted into the action." *See Esposito v. U.S.*, 368 F.3d 1271, 1278 (10th Cir. 2004) ("Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application.") Pursuant to Rule 17(a), substitution "shall have the same effect as if the action had been commenced in the name of the real party in interest." Fed. R. Civ.

P. 17(a).  Because "nothing in Rule 17(a) requires that the original plaintiff have capacity to sue" the proposed Third Amended Complaint (Doc. 67-1) corrects the standing issue raised by Defendants and is not subject to dismissal based on the statute of limitations.  *Esposito*, 368 F.3d at 1277.  It does not, however, cure the other deficiencies discussed throughout this order.

### 1.    Failure to Protect

In Count I of the proposed Third Amended Complaint, Plaintiff[4] claims that "[b]ut for Defendants' collective disregard for correctional safety norms, accepted correctional safety practices, and recognized national correctional standards, [Joshua] would still be alive."  (Doc. 67-1 at 14.)  Plaintiff casts this failure-to-protect claim in terms of Defendants' deliberate indifference to Joshua's rights.  (*Id*. at 15-18.)  Defendants move to dismiss this claim, in their official and individual capacities, arguing Plaintiff's complaint fails to allege non-conclusory facts making deliberate indifference by any jail employee plausible.

"Prison and jail officials, as well as the municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners.  Nonetheless, they have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity."  *Cox v. Glanz*, 800 F.3d 1231, 1247-48 (10th Cir. 2015).  Establishing an Eighth Amendment claim for failure to protect an inmate from harm by other inmates requires Plaintiff to "show that he [was] incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."  *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (brackets and internal quotation marks omitted).  To satisfy the subjective component, Plaintiff must show that the Defendants responded in an "objectively unreasonable manner"—that is, they "knew of ways to reduce the harm but knowingly or

---

[4] As special administrator of Joshua's Estate, Lindsey DeVilbiss is the only Plaintiff concerning the four § 1983 claims. As such, the court refers to Plaintiff in the singular tense throughout the rest of its order.

recklessly declined to act." *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (brackets an internal quotation marks omitted).  Defendants are only liable under § 1983 for their deliberate— not negligent—deprivation of constitutional rights.  *Woodward v. Warland*, 977 F.2d 1392, 1399 (10th Cir. 1992).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 Fed. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)).  "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238).  Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 F.3d at 1236 (internal quotation marks omitted)).

Here, Plaintiff has failed to plead sufficient factual allegations to support a conclusion that any jail employee drew the inference that a substantial risk of harm existed before the assault.  The complaint alleges "Joshua repeatedly asked to go to solitary confinement, known as 'the hole', because he feared for his safety on or about August 28, 2017." (Doc. 67-1 at 11.)  The complaint does not say to whom Joshua made this request and whether Joshua informed this unknown person of his apparent danger.  Even with the court assuming Joshua informed a guard, absent are facts illustrating what potential harm was relayed to the guard, when Joshua relayed the information, or who was responsible for retaining Joshua within his regular pod.  Further, Plaintiff's complaint wholly fails to specifically allege actions taken by any named defendant or subordinate jail employee.  The complaint simply lumps them all together.  The complaint must "make clear

exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him." *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (citations omitted).  In addition to making entirely conclusory allegations, by using "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma,* 519 F .3d 1242, 1250 (10th Cir. 2008).  The proposed pleading does not name as a defendant any jailer who actually received Joshua's requests to be placed in solitary confinement; instead, it makes only general allegations against the named Defendants collectively alleging a supervisory relationship.  As noted above, a supervisory relationship alone is not enough to state a § 1983 claim.  *Iqbal*, 556 U.S. at 676.

Finally, before the assault, the complaint affirmatively alleges that it appeared to the jailer at the scene that the situation was de-escalating.  (Doc. 67-1 at 10); *see also Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994) (holding a jail employee's failure "to alleviate a significant risk that he should have perceived but did not," is not enough to satisfy the deliberate indifference requirement.)  This runs counter to Plaintiff's arguments of deliberate indifference since, according to Plaintiff's own allegations, the jailer was under the subjective belief that the situation was settling down.  The proposed Third Amended Complaint is silent as to any reports of Defendant Andrews attacking any other MCJ inmate or staff in the past, which weighs against any inference that the jailer knew Andrews was abnormally dangerous.  Not "every injury suffered by one prisoner at the hand of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Because Plaintiff has failed to allege a constitutional violation the supervisors and municipalities cannot be liable on this claim.

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002).  Since Plaintiff's proposed claim would be subject to dismissal for failure to state a claim, the motion to amend to add this claim is futile and is therefore denied.

### 2.      Failure to Provide Medical Care

In Count IV of the proposed Third Amended Complaint, Plaintiff claims Sheriff Miller and Undersheriff Mitchell, in their individual and official capacities, were deliberately indifferent to Joshua's serious medical needs and failed to provide medical care because, "[a]s alleged, when prisoners acquire a serious medical condition the County Defendants' policies delay evaluation and treatment until return to the Sedgwick County Jail and delegate the care of prisoners to personnel who may, or may not, be qualified."  (Doc. 68 at 12-13.)  Because of this, Plaintiff believes deliberate indifference can be illustrated in the manner in which the "County Defendants acted or failed to act in promulgating policies and procedures related to the medical treatment of incoming prisoners, despite knowledge of a substantial risk of serious harm."  (*Id*. at 13.) However, Plaintiff's proposed Third Amended Complaint does not allege that the failure to provide medical care caused Joshua's death nor does Plaintiff allege what medical aid should have been provided.  Plaintiff's complaint fails to sufficiently allege that Miller or Mitchell's actions resulted in the denial of necessary medical care to Joshua or that either had a sufficiently culpable state of mind.

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs."  *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020).  In order to state a claim for a failure to provide medical care, Plaintiff's allegations must satisfy "both an objective and a subjective component" with respect to each Defendant.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  As explained by the Tenth Circuit:

> The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted). We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (further quotation omitted)). Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. *See, e.g., Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

*Mata*, 427 F.3d at 751. Thus, in order to establish the objective component for a claim of deliberate indifference to an inmate's serious medical needs, Plaintiff must identify a medical need as to which "the delay [in providing treatment] resulted in substantial harm." *Oxendine*, 241 F.3d at 1276.

In this case, Plaintiff points to Joshua's death as satisfying the objective component; however, he fails to identify any medical need as to which Defendants' failure to provide medical care resulted in Joshua's death. Indeed, the cause of Joshua's death was a blow to the head and the resulting fall caused by Defendant Andrews. Plaintiff's proposed Third Amended Complaint fails to establish any connection between Defendants' failure to treat Joshua's medical conditions and his death at the hands of Andrews. The only real medical need Plaintiff alleges in his pleading focuses on Defendants' failure to identify and treat a preexisting medical condition involving some undisclosed illness and urinating blood. (Doc. 67-1 at 10.) Therefore, Plaintiff's proposed Third Amended Complaint fails to adequately plead the objective component of a claim of deliberate

indifference to Joshua's serious medical needs.  Accordingly, Plaintiff's motion to amend to add this claim is denied as futile.

### 3. Failure to Train and Supervise

In Counts II and III of the proposed Third Amended Complaint, Plaintiff claims Defendants Sheriff Miller and Undersheriff Mitchell are liable—in their individual and official capacities—under the Eighth Amendment because they failed to train and supervise staff on complying with MCJ policies, recognizing and handling life-threatening situations, responding to medical emergencies appropriately, and generally safeguarding the rights of prisoners.  (Doc. 67-1 at 19-22.)  Defendants Miller and Mitchell assert qualified immunity, in their individual capacities, and argue Plaintiff's complaint provides only conclusory, formulaic allegations of failure to train and supervise.  (Doc. 73 at 23.)

Plaintiff's claims against Sheriff Miller and Undersheriff Mitchell in their official capacity is the equivalent of a suit against Meade County.  *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998); *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) (noting official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent.")  In order to impose municipal liability under § 1983, Plaintiff must identify an official custom or policy that "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  The Tenth Circuit has distilled a municipal liability claim into three basic elements: official policy, causation, and state of mind.  *Id.*  "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."  *Id.* at

770 (citation omitted).  The causation element is satisfied by showing "a direct causal link between the municipal action and the deprivation of federal rights."  *Id.*

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.  The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring.

*Id.* (citations and internal quotations omitted).  Finally, where the challenged municipal policy is not itself facially unconstitutional (as is generally the case when a plaintiff proceeds on theories of failure to train, supervise, or discipline) the state of mind element is satisfied by showing that the challenged policy was established "with deliberate indifference as to its known or obvious consequences."  *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (internal quotations omitted)).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Id.* at 771 (quotation omitted).  Within this general framework, assertions of municipal liability based on policies of failure to train, supervise, discipline, and similar theories may all be evaluated. *See, e.g., Schneider*, 717 F.3d at 771-80 (evaluating claims for municipal liability based on inadequate hiring, failure to train, failure to investigate claims of misconduct, failure to discipline, and failure to supervise within the foregoing general framework); *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284-90 (10th Cir. 2019) (same).

17

Applying these standards to the complaint, the court concludes these proposed claims against Defendants Miller and Mitchell are futile.  Causation is an essential element of claims for failure to train and supervise.  *Schneider*, 717 F.3d at 770 (plaintiff must show "a direct causal link between the municipal action and the deprivation of federal rights.")  In this case, as described *supra*, Plaintiff fails to adequately plead an underlying violation of federal rights; thus, there can be no supervisor liability.  Accordingly, Plaintiff's proposed claims alleging supervisory liability for failure to train and supervise are futile, and the motion to amend to add those claims is denied.

### 4.      State Law Claims

Because the court dismisses Plaintiff's federal claims, the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The remaining Plaintiffs and Defendants are not diverse, and any claims remaining in Plaintiffs' Second Amended Complaint or in their proposed Third Amended Complaint arise under state law.  Although the court could exercise supplemental jurisdiction over Plaintiffs' state law claims, the court declines to do so.  *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (quoting *Smith v. City of Enid ex rel Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)).  There are no compelling circumstances that justify this court retaining jurisdiction.  In addition, this case is in the early stages as a scheduling order has not been entered and no formal discovery has been exchanged.  Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

IV.     **Conclusion**

Joshua and his family suffered a tragic loss at the hands of Defendant Andrews, and nothing in this order is intended to diminish that loss.  However, the pleadings in this case fail to allege facts that would establish liability against any Defendant under federal law.

Accordingly, Defendants' motions to dismiss (Docs. 50, 53, 56) are GRANTED and Plaintiffs' motion to amend (Doc 67) is DENIED.

IT IS SO ORDERED this 29th day of March, 2021.


                                                    s/ John W. Broomes
                                                    JOHN W. BROOMES
                                                    UNITED STATES DISTRICT JUDGE